UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

SEAN McINTYRE

      Plaintiff,

-vs-                                          Case No.    5:14-cv-164-Oc-10PRL

UNITED STATES OF AMERICA,

      Defendant.
_____/

**MEMORANDUM OPINION**
**(Findings and Conclusions)**

This is an action brought against the United States by Sean McIntyre under the Federal Tort Claims Act (28 U.S.C. § 2671 et seq.). The lawsuit arises out of an automobile accident that occurred on July 5, 2007, in Marion County, Florida. Mr. McIntyre was driving east on State Road 40 when he was struck on the right side of his automobile by an errant Postal Service vehicle that had failed to stop at a stop sign. The force of the impact redirected Mr. McIntyre's vehicle into the path of the oncoming traffic in the westbound lanes of State Road 40. This resulted in a head-on collision by Mr. McIntyre with a third vehicle. That crash caused the dashboard of Mr. McIntyre's automobile to collapse into the passenger compartment, striking him on the knees.

At the time of the accident, Mr. McIntyre was able to extricate himself from his vehicle and to walk, but he was nonetheless transported to the emergency room of

an Ocala hospital.  While there he complained of pain in his knees, but after examination he was released the same day with instructions to follow up with his primary health care provider.

- Over the next eight months (July, 2007, to mid-March, 2008), Mr. McIntyre was seen by his regular doctors for complaints of pain in his neck, back and knees.  During this time he was prescribed over-the-counter medications and engaged in physical therapy.

- On March 19, 2008, Mr. McIntyre was referred to Dr. Robert Roberts, an orthopedic surgeon.  At his first visit with Dr. Roberts on May 5, 2008, Mr. McIntyre complained of neck pain, back pain and left knee pain.  Dr. Roberts obtained x-rays of Mr. McIntyre's back and recommended for that condition that he continue his existing course of conservative treatment by his regular physicians.

- On June 25, 2008, Mr. McIntyre returned to Dr. Roberts after an MRI had been obtained with respect to Mr. McIntyre's left knee; and, on July 17, 2008, Dr. Roberts performed surgery on Mr. McIntyre's left knee to repair a torn medial meniscus.

- Because Mr. McIntyre had also presented complaints of hip pain during his visit on June 25, 2008, Dr. Roberts ordered

an MRI examination of Mr. McIntyre's hips. That was done on September 12, 2008. Dr. Roberts diagnosed avascular necrosis (also known as osteonecrosis) of the left hip. He found the right hip to be normal. Because he no longer performed hip surgery, Dr. Roberts referred Mr. McIntyre to hip specialists. He last saw Mr. McIntyre on September 18, 2008.

- On February 17, 2009, Mr. McIntyre consulted Dr. Scott Katzman, a Board Certified orthopedic surgeon, for a second opinion concerning his left hip. (Dr. Katzman gave no testimony relating to Mr. McIntyre's right hip.) Dr. Katzman confirmed Dr. Roberts' diagnosis of significant osteonecrosis or avascular necrosis affecting the left hip; but, like Dr. Roberts, Dr. Katzman had stopped performing hip surgery and he too referred Mr. McIntyre to a number of other surgeons for a recommended replacement of his left hip. Dr. Katzman last saw Mr. McIntyre on May 5, 2010.[1]

- On November 8, 2010, Mr. McIntyre saw Dr. Gordon Zuerendorfer, another Board certified orthopedic surgeon. Dr. Zuerendorfer took Mr. McIntyre's history, reviewed his

---

[1] While he was seeing Dr. Katzman – from February 17, 2009 to May 5, 2010 – Mr. McIntyre complained of back pain and received numerous cortisone injections to relieve the pain in his back.

3

>    accumulated medical records and recommended hip replacement. Mr. McIntyre took that recommendation under advisement for a little more than five months. He then returned to Dr. Zuerendorfer on April 26, 2011 for surgery on that date to replace his left hip.
> 
> - On September 19, 2011, Dr. Zuerendorfer performed the same surgery replacing Mr. McIntyre's right hip.
> 
> - Dr. Zuerendorfer last treated Mr. McIntyre on January 3, 2012, at which time he recommended that Mr. McIntyre have back surgery to repair bulging or herniated discs in his lumbar spine.
> 
> - On March 17, 2014, Mr. McIntyre had back surgery to repair a compressed herniated disc at L4 - L5. That surgery was performed by Dr. Robert Masson, Jr.

Mr. McIntyre's administrative claim under the Federal Tort Claims Act was filed on June 22, 2009 (received on June 25, 2009) before any of his surgeries to his hips or his back, and he sought damages in the amount of $500,000. His claim was denied and he then brought this action.

The United States has stipulated that the Postal Service vehicle involved in the wreck was being operated at the time of the accident by a Postal Service employee engaged in the normal course of her duties. The Government also admits that the Postal Service employee was negligently operating the vehicle at the time in question,

and that such negligence was a proximate or legal cause of the automobile collisions involving Mr. McIntyre.  Further, the Government concedes any issue of causation with respect to the injury and resulting surgery involving Mr. McIntyre's left knee.

The United States disputes, however, any causal connection between the accident and any injuries or resulting damages on account of Mr. McIntyre's back or hips.  The United States also contends that any damages awarded to Mr. McIntyre must be limited to the amount demanded in his administrative claim – $500,000.  Those issues were therefore tried before the court in a bench trial, and the parties have made their post trial submissions.  The case is ready for decision.[2]

### Discussion

A.   <u>Mr. McIntyre's Hip Replacements and Back Surgery</u>.  The United States did not seek to have Mr. McIntyre examined by a medical practitioner, and did not present the testimony of any expert witness at trial.  Rather, The Government relies upon the testimony of the Plaintiff's own medical witnesses, particularly their testimony on cross examination, to challenge their credibility or reliability under <u>Daubert</u>.[3]

Avascular necrosis, or osteonecrosis, is defined as a loss of blood supply to a bone, in this case the femur in the area of the hip.  The loss of blood to the femur causes the bone to deteriorate and die.  The condition normally takes time to develop,

---

[2]   The parties have agreed, and the court finds, that the court has both <u>in personam</u> and subject matter jurisdiction; that venue is proper in this district; and that Florida law supplies the rule of decision.

[3]   <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U. S. 579, 113 S. Ct. 2786 (1993).

5

usually a period of several months, and may be asymptomatic while doing so. The accepted course of treatment for advanced avascular necrosis of the hip is surgical replacement of the hip.

Orthopaedic surgeons often ascribe the presence of avascular necrosis of the hip to an idiopathic or unknown origin. There are, however, several recognized causes of the condition: alcohol abuse, use of steroids, dislocation of the hip and trauma. The United States developed evidence that Mr. McIntyre had been drinking a six pack of beer on a daily basis for many years prior to the accident. With that predicate in hand, the Government then attempted to extract a concession from the physicians that alcohol abuse could not be ruled out and was the more likely cause of Mr. McIntyre's avascular necrosis than trauma. The effort failed when Dr. Roberts persuasively explained that not every alcoholic develops avascular necrosis, and that a mere <u>history</u> of alcoholism is meaningless for diagnostic purposes in the absence of evidence of other physical degradations of the body due to abuse of alcohol such as liver damage, and there is no evidence that Mr. McIntyre had a damaged liver.

Here, two of the three orthopedists who sequentially examined and treated Mr. McIntyre – Dr. Roberts and Dr. Zuerendorfer – both testified that the Plaintiff's avascular necrosis of the left hip was caused, more likely than not, by the trauma he sustained in the auto collision on July 5, 2007. The third physician, Dr. Katzman, was equivocal concerning the cause of Mr. McIntyre's avascular necrosis. His opinion was that the Plaintiff's avascular necrosis in his left hip already existed at the time of the accident in July, 2007, because of the advanced stage of that condition as revealed

6

by the MRI obtained by Dr. Roberts in September, 2008.  On the other hand, Dr. Katzman also said that the trauma sustained during the accident <u>might</u> have been the cause; and, in any event, would have contributed to the severity of the avascular necrosis and the pain in the left hip.[4]  Significantly he did <u>not</u> say that the trauma experienced by the Plaintiff was <u>not</u> the cause of his avascular necrosis so that his opinion, while different from those of Drs. Roberts and Zuerendorfer, does not directly contradict them.

At this stage of analyzing the evidence, therefore, the Plaintiff has the benefit of the unrebutted opinions of two Board Certified orthopedic surgeons that Mr. McIntyre's avascular necrosis was the proximate or legal result of the Plaintiff's injury to his left knee <u>and</u> his left hip sustained in the auto accident of July 5, 2007.

In addition, Dr. Zurendorfer gave an opinion that the Plaintiff would likely need additional surgery in the future to again replace his left hip because the artificial hip has a useful life of 20 to 30 years.  The court finds, however, that this testimony is too speculative to support an award for future medical expenses related to the left hip.  Mr. McIntyre was 47 at the time of his left hip surgery.  If his hip should last 30 years – within the time frame testified to by Dr. Zurendorfer – Mr. McIntyre would then be

---

[4] Both Dr. Katzman and Dr. Zuerendorfer testified that the source of pain is often misidentified by patients and physicians alike.  Back pain can actually be caused by the hips.  Thus, the fact that Mr. McIntyre first complained of <u>hip</u> pain when he saw Dr. Roberts in June, 2008, after he had been complaining of <u>back</u> pain before that date, cannot be given significant weight either way in determining the onset of the Plaintiff's avascular necrosis.  What he attributed to back pain may have been caused, in part, by his avascular necrosis of the hip.

77 years of age and approaching the end of his life expectancy as a whole.[5] Moreover, Dr. Zurendorfer's opinion concerning the need for future surgery was based upon a standard of reasonable medical probability whereas "Florida law restricts recovery of future medical expenses to those expenses 'reasonably certain' to be incurred." Volusia County v. Joynt, 179 So.3d 448, 452 (Fla. 5th DCA 2015) quoting Loftin v. Wilson 67 So.2d 185, 188 (Fla 1953).

With respect to Mr. McIntyre's back, he complained of back pain immediately after the accident and was conservatively treated for that condition by his regular physicians for approximately eight months when he was referred to Dr. Roberts in March, 2008.  Dr. Roberts diagnosed (among other things) spondylosis of the lumbar spine, specifically, pre-existing degenerative changes exacerbated by the trauma of the July 5, 2007, auto accident.[6]   He recommended at that time that Mr. McIntyre continue with the conservative course of treatment.

On the other hand, with respect to Mr. McIntyre's right hip, Dr. Katzman offered no opinion and Dr. Roberts found that hip to be normal on the basis of the MRI he caused to be made in September, 2008, more than a year after the accident.  It was more than four years after the accident that the Plaintiff saw Dr. Zuerendorfer who first

---

[5]     Social Security Actuarial Life Table (https:11www.ssa.gov/oact/STATS/table4c6.html) At age 47 Mr. McIntyre's life expectancy was 32.18 years.

[6]     Dr. Roberts' opinion concerning the Plaintiff's back was unrebutted, and was supported by the testimony of Dr. Zurendorfer.  Also, under Florida law, where a negligent act causes an aggravation of a pre-existing physical condition, and the resulting damage cannot be apportioned between the pre-existing condition and the aggravation, then the court should award damages for the entire condition suffered by the claimant. Fla. Std. Jury Instr. (Civil) 501.5.  That rule applies here.

diagnosed avascular necrosis in Mr. McIntyre's right hip and while Dr. Zuerendorfer offered an opinion that the avascular necrosis in Mr. McIntyre's right hip was also caused by the trauma of the auto accident in 2007, the court does not find that opinion – which stands alone – to be persuasive.[7]  There was no specific testimony or evidence that a traumatic injury in July, 2007, which had no adverse affect on the right hip as of September, 2008, would likely be the cause of avascular necrosis discovered in 2011.

The Government's attack on the Plaintiff's case consists of a defensive claim that the Plaintiff's medical witnesses should not be credited under Daubert because their opinions as to causation are supported only by a temporal relationship between the auto accident and the development of avascular necrosis of the left hip.[8]  That argument, however, is not supported by the record and is unpersuasive.  Dr. Roberts and Dr. Zuerendorfer relied in part on the temporal relationship, to be sure, but also engaged in a differential diagnosis (at least with regard to the left hip) by excluding alcohol abuse as a more likely cause – the only other possible cause suggested by the evidence and by the United States in its examination of the witnesses.[9]

---

[7]  This finding is not a repudiation of Dr. Zuerendorfer's opinion concerning the presence of avascular necrosis in Mr. McIntyre's right hip at the time of his replacement surgery.  It is, rather, a determination that the evidence does not preponderate in favor of a finding that the accident was the proximate or legal cause of any avascular necrosis in the right hip at that time.

[8]  The Government cites to Hendrix ex rel. G.P. v. Evenflo Company, Inc., 609 F.3d 1183 (11th Cir. 2010) and Cooper v. Marten Transport, Ltd., 539 Fed. Appx. 963 (11th Cir. 2013).

[9]  As previously discussed, the recognized causes of avascular necrosis are alcohol abuse, use of steroids, dislocation of the hip, and trauma.  Alcohol abuse was ruled out and

With respect to the issue involving limitation of the Plaintiff's total damages to the amount demanded in his administrative claim ($500,000), 28 U.S.C. § 2675(b) provides:

> (b) Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim.

In this instance Mr. McIntyre's claim was filed June 22, 2009. His knee surgery had been performed the year before, but his left hip and back surgeries occurred in 2011 and 2014, respectively. Thus, any damages relating to those events could not have been known at the time the Plaintiff submitted his claim in 2009. The law of the Circuit clearly supports a conclusion that such damages are recoverable under the "except" clause of the statute. Cole v. United States, 861 F.2d 1261, 1262 (11th Cir. 1988).

Accordingly, the court finds, based upon a preponderance of the evidence:

1. That the auto accident that occurred on July 5, 2007, the subject of this action, was solely caused by the negligence and legal fault of the Postal Service employee while she was engaged in the performance of her official duties, and that the United States is legally

---

there was no evidence of prior use of steroids or a prior dislocation. (Dr. Katzman's cortisone injections in Mr. McIntyre's back did not begin until 2009, after Dr. Roberts' MRI in September 2008 disclosed advanced avascular necrosis already developed in Plaintiff's left hip.)

10

responsible under the Federal Tort Claims Act and the law of Florida for the Plaintiff's injuries and resulting damages that were proximately and legally caused by such negligence.

2.  That the Plaintiff's injury to his left knee – a torn meniscus – was proximately and legally caused by such negligence.

3.  That the Plaintiff's injury to his left hip – avascular necrosis – was proximately and legally caused by such negligence; provided, however, the Plaintiff's claim for future medical expenses related to his left hip was not established by a preponderance of the evidence.

4.  That Plaintiff's injury to his back – herniated disc in the lumbar region – was proximately and legally caused by such negligence or was exacerbated by such negligence so that it cannot be said that the herniated disc would have existed apart from the injury caused by the negligence.

5.  That Plaintiff's claim of injury to his right hip – avascular necrosis – was not proximately or legally caused by such negligence.

B.  <u>Mr. McIntyre's Recoverable Damages.</u>  Based upon the foregoing findings, the court further finds and concludes as a matter of law that Mr. McIntyre is entitled to recover damages from the United States for the following elements of damage in the following amounts.

1.  <u>Lost Wages in the Past.</u>  At the time of the accident Mr. McIntyre was 42 years of age, in good health with an 11th grade education.  For the 10 years

11

immediately preceding the accident he had worked in the building construction industry performing manual labor (lifting heavy materials, climbing and using stilts) and supervising work crews.  The evidence of his income was less than certain but sufficient to support a finding by a preponderance of the evidence that he averaged approximately $30,000 per annum.  His injury to his left hip (with hip replacement), and to his back, are permanent in nature and he is unable to perform his prior job as a construction worker.[10]  He performed his job as a construction worker until the time of his left hip replacement on April 26, 2011, and has not worked since that time.

For his net lost wages in the past from April 26, 2011, to the present, Mr. McIntyre will be awarded $76,750.00.

2. <u>Future Loss of Earning Capacity</u>.  For his net lost earning capacity in the future, from the present until November, 2026, when Mr. McIntyre will become 62 years of age, he will be awarded. $146,800.00.

3. <u>Past Medical Expenses</u>.  For his past medical expenses related to his left knee, his left hip replacement and his treatment for his back, and his back surgery, Mr. McIntyre will  be awarded. $80,455.

4. <u>Pain and Suffering</u>. For his pain and suffering associated with the above compensable elements of damage, past and future, Mr. McIntyre will be awarded. $150,000.00.

---

[10]    He has been awarded Social Security Disability Benefits of $1,300 per month, and those benefits constitute a deductible collateral source under Florida Statute 768.76(2)(a)1.

## Conclusion

The Clerk is directed to enter judgment in favor of the Plaintiff and against the United States in the total amount of $454,005.00.  The Clerk is further directed to then terminate all pending motions, if any, and to close the file.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida, this 8th day of September, 2016.

*[signature]*
UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
             Mari Jo Taylor, Courtroom Deputy